```
                                                    FILED
                                            CLERK, U.S. DISTRICT COURT

                                              01/07/2026

                                           CENTRAL DISTRICT OF CALIFORNIA
                                           BY:      M.B.      DEPUTY
```

1  TODD BLANCHE
   Deputy Attorney General
2  BILAL A. ESSAYLI
   First Assistant United States Attorney
3  ALEXANDER B. SCHWAB
   Assistant United States Attorney
4  Acting Chief, Criminal Division
   STEPHANIE L. ORRICK (Cal. Bar No. 199251)
5  Special Assistant United States Attorney
        Ronald Reagan Federal Bldg & U.S. Courthouse
6       411 West 4th Street, Suite 8000
        Santa Ana, California 92701
7       Telephone: (714) 338-3599
        Facsimile: (714) 338-3561
8       E-mail:    stephanie.orrick@usdoj.gov

9  Attorneys for Plaintiff
   UNITED STATES OF AMERICA

10

11                    UNITED STATES DISTRICT COURT

12              FOR THE CENTRAL DISTRICT OF CALIFORNIA

13  UNITED STATES OF AMERICA,           No. 8:26-cr-00001-FWS

14            Plaintiff,                 PLEA AGREEMENT FOR DEFENDANT
                                         ISRAEL CLAUSTRO
15            v.

16  ISRAEL CLAUSTRO,

17            Defendant.

18

19      1.   This constitutes the plea agreement between ISRAEL CLAUSTRO

20  ("defendant") and the United States Attorney's Office for the Central

21  District of California (the "USAO") in the above-captioned case.

22  This agreement is limited to the USAO and cannot bind any other

23  federal, state, local, or foreign prosecuting, enforcement,

24  administrative, or regulatory authorities.

25                       DEFENDANT'S OBLIGATIONS

26      2.   Defendant agrees to:

27           a.   Give up the right to indictment by a grand jury and,

28  at the earliest opportunity requested by the USAO and provided by the

Court, appear and plead guilty to the single-count information

charging defendant with Mail Fraud in violation of 18 U.S.C. § 1341.

       b.   Not contest facts agreed to in this agreement.

       c.   Abide by all agreements regarding sentencing contained

in this agreement.

       d.   Appear for all court appearances, surrender as ordered

for service of sentence, obey all conditions of any bond, and obey

any other ongoing court order in this matter.

       e.   Not commit any crime; however, offenses that would be

excluded for sentencing purposes under United States Sentencing

Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

within the scope of this agreement.

       f.   Be truthful at all times with the United States

Probation and Pretrial Services Office and the Court.

       g.   Pay the applicable special assessment at or before the

time of sentencing unless defendant has demonstrated a lack of

ability to pay such assessments.

       h.   Resign on or before January 12, 2026, as a Judge of

the Superior Court of California, County of Orange, and not seek

elective or appointive office during the duration of supervised

release.

<u>THE USAO'S OBLIGATIONS</u>

3.   The USAO agrees to:

       a.   Not contest facts agreed to in this agreement.

       b.   Abide by all agreements regarding sentencing contained

in this agreement.

       c.   At the time of sentencing, provided that defendant

demonstrates an acceptance of responsibility for the offense up to

and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

d.   Recommend that defendant be sentenced to a term of probation with a condition of home confinement in lieu of imprisonment for a period equal to that of the low end of the applicable Sentencing Guidelines range.  For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.  The USAO agrees to this subparagraph only if all the conditions set forth in this paragraph (paragraph 3) are met and if defendant has not committed, and refrains from committing, acts constituting obstruction of justice within the meaning of U.S.S.G. § 3C1.1.

e.   Except for criminal tax violations, not further criminally prosecute defendant for any federal crime arising out of defendant's conduct described in the agreed-to factual basis set forth in paragraph 9 below.  Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement.  Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

NATURE OF THE OFFENSE

4.    Defendant understands that for defendant to be guilty of the crime charged in Count One of the information, that is, Mail Fraud, in violation of Title 18, United States Code, Section 1341, the following must be true: (1) defendant knowingly participated in, devised, or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises; (2) the statements made or facts omitted as part of the scheme were material, that is, they had a tendency to influence, or were capable of influencing, a person to part with money or property; (3) defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and (4) defendant used, or caused to be used, the mails to carry out or attempt to carry out an essential part of the scheme.

PENALTIES

5.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1341 is: 20 years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6.    Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could

1  result in defendant serving a total term of imprisonment greater than
2  the statutory maximum stated above.

3      7.   Defendant understands that, by pleading guilty, defendant
4  may be giving up valuable government benefits and valuable civic
5  rights, such as the right to vote, the right to possess a firearm,
6  the right to hold office, and the right to serve on a jury. Defendant
7  understands that he is pleading guilty to a felony and that it is a
8  federal crime for a convicted felon to possess a firearm or
9  ammunition.  Defendant understands that the conviction in this case
10 may also subject defendant to various other collateral consequences,
11 including but not limited to revocation of probation, parole, or
12 supervised release in another case and suspension or revocation of a
13 professional license.  Defendant understands that unanticipated
14 collateral consequences will not serve as grounds to withdraw
15 defendant's guilty plea.

16     8.   Defendant understands that, if defendant is not a United
17 States citizen, the felony conviction in this case may subject
18 defendant to: removal, also known as deportation, which may, under
19 some circumstances, be mandatory; denial of citizenship; and denial
20 of admission to the United States in the future.  The Court cannot,
21 and defendant's attorney also may not be able to, advise defendant
22 fully regarding the immigration consequences of the felony conviction
23 in this case.  Defendant understands that unexpected immigration
24 consequences will not serve as grounds to withdraw defendant's guilty
25 plea.

26                          FACTUAL BASIS

27     9.   Defendant admits that defendant is, in fact, guilty of the
28 offense to which defendant is agreeing to plead guilty.  Defendant

and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 11 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

California's Subsequent Injuries Benefits Trust Fund ("SIBTF") is a special fund administered by the California Division of Workers' Compensation ("DWC"), which is a division of the California Department of Industrial Relations ("DIR"), a California state agency responsible for administering and enforcing laws governing wages, overtime, workplace safety, and medical care and other benefits for injured workers. The SIBTF provides additional compensation to injured workers who already had a disability or impairment at the time of a subsequent injury. The SIBTF exists to enable employers to hire disabled workers without fear of being liable for the effects of previous disabilities or impairments. The SIBTF benefits are disbursed from an account controlled by the state of California that receives its funding from assessments on employers.

The process for filing a claim with the SIBTF has several steps: (1) the injured workers' compensation claim is settled or adjudicated; (2) the injured worker or their attorney mails an application of intent to seek SIBTF benefits to the SIBTF Unit; (3) the injured worker is evaluated by medical providers for his/her prior disability; (4) in addition to evaluating the injured worker, the medical providers review the injured worker's medical records and then generate a med-legal report; (5) the med-legal reports are

6

1   mailed to the SIBTF Unit; (6) a claims examiner from the SIBTF Unit

2   reviews the medical reports in conjunction with a DIR attorney and

3   attempts to negotiate a settlement or denies the claim; (7) if the

4   SIBTF claim is accepted, the injured worker and their attorney (if

5   they are represented) will receive benefit payments by check via

6   mail; and (8) if the SIBTF claim is denied, the injured worker or

7   their attorney can appeal the decision to the California Workers'

8   Compensation Appeal Board ("WCAB").

9          In the SIBTF program, the medical providers could bill the SIBTF

10  program for the evaluation of the injured workers, which evaluation

11  the SIBTF program would use to determine whether the worker qualified

12  for SIBTF program payments. The medical providers who performed such

13  evaluations of the injured workers would mail a bill via the United

14  States Postal Service ("USPS") to the SIBTF Unit in Sacramento,

15  California. Such bills were submitted on Form 1500, entitled "HEALTH

16  INSURANCE CLAIM FORM." That form required the medical provider to

17  list the rendering provider and his/her "RENDERING PROVIDER ID #" of

18  the medical services and required the signature of the physician that

19  certified, among other things, that the information on the claim form

20  was true, accurate, and complete. Typically, the attached multiple

21  page medical report (also referred to as a "med-legal report")

22  generated by the medical provider would accompany the bill mailed to

23  the SIBTF unit. During the scheme to defraud, defendant owned a

24  medical management company that managed Liberty Medical Group Inc.

25  ("Liberty") that employed medical providers such as physicians,

26  chiropractors, and psychologists to evaluate patients.

27         At all times relevant to this Plea Agreement, defendant was an

28  attorney, was not a physician or other medical professional.

7

1       In November 2015, Liberty was incorporated as a medical
2   corporation in California, listing its agent for service of process
3   in Costa Mesa, California.  Under California law, shareholders/owners
4   of a medical corporation must be licensed in the practice of medicine
5   or other related medical fields, such as a psychologist, registered
6   nurse, or licensed physician assistant.  In April 2016, defendant and
7   Co-schemer Kevin Tien Do ("Do") opened a business bank account in the
8   name of Liberty at Wells Fargo Bank, N.A.  Defendant was listed as
9   the "Signer" on the account application/signature card.  Co-schemer
10  Do signed that bank account application/signature card, even though
11  he did not control Liberty, which was in fact controlled by
12  defendant.  Even though Liberty ultimately listed another doctor as
13  Liberty's CEO and Director beginning in May 2019, defendant and Co-
14  schemer Do did not remove Co-schemer Do's name from Liberty's bank
15  account.  Beginning in or around October 2016, Liberty's medical
16  providers, including defendant, generated medical reports related to
17  the SIBTF program.  Beginning in around that same month, October
18  2016, Liberty would then mail those medical reports to the SIBTF and
19  bill the SIBTF for med-legal evaluations.
20      After Liberty was formed and while Co-schemer Do was working for
21  Liberty, in around January 2017, California Labor Code Section 139.21
22  became operative in California.  California Labor Code Section
23  139.21(a)(1)(A) provided that the Administrative Director of the DWC
24  "shall promptly suspend" any medical provider who had been convicted
25  of a felony involving fraud or abuse of the Medicare, Medicaid, or
26  Medi-Cal programs, or the California workers' compensation system.
27  Accordingly, medical providers could be suspended from participating
28  in California's workers' compensation system for a variety of

8

1   reasons, which would include having a previous healthcare fraud

2   conviction, like Co-schemer Do had.  California Labor Code Section

3   139.21 also required that notification of such suspended providers

4   would be posted on the department's Internet website.

5           On August 25, 2017, Co-schemer Do was served with notice of his

6   provider suspension pursuant to Section 139.21, based upon his 2003

7   federal health care fraud conviction.  Based upon that suspension,

8   Co-schemer Do was prohibited from being involved or participating in

9   any capacity in any aspect of California's workers' compensation

10  system, which included the SIBTF program.  Such suspension proscribed

11  any participation the SIBTF program, including rendering services,

12  owning, or having an ownership interest in a medical corporation,

13  being a medical director, compiling bills, submitting bills,

14  consulting, and/or working in a medical director capacity, which

15  defendant and Co-schemer Do both knew.

16          In April 2018, Co-schemer Do emailed a copy of his formal

17  suspension notice to defendant at defendant's email address

18  associated with the management company with subject line "Amended

19  Notice from Workers Compensation."  That notice provided that in

20  addition to his 2003 federal health care fraud conviction, Co-schemer

21  Do was also being suspended from participating in California's

22  workers' compensation program under Section 139.21(a)(1)(B) "due to

23  fraud or abuse from the Medi-Cal program."  The management company's

24  "Statement of Information" form filed with the California Secretary

25  of State in 2017 listed defendant as its CEO and its type of business

26  as "Healthcare management."

27          Subsequent to receiving the notice of his suspension from the

28  California workers' compensation system, Co-schemer Do appealed his

9

1   suspension to the California Workers' Compensation Appeals Board.  On
2   October 3, 2018, a hearing was held on Co-schemer Do's appeal, and on
3   October 10, 2018, a final decision issued, which affirmed Co-schemer
4   Do's suspension.  On October 19, 2018, the Administrative Director of
5   the California DWC issued a final order that suspended Co-schemer Do
6   from participating in California's workers' compensation system.
7   That Order was provided to Co-schemer Do by certified mail on October
8   19, 2018. At that time, Co-schemer Do told defendant that he had lost
9   his appeal and was thus indefinitely suspended from participating in
10  California's workers' compensation system.
11      Co-schemer Do's suspensions from participating in various
12  California state health care programs were also publicly available.
13  First, based upon his 2003 federal health care fraud conviction, Co-
14  schemer Do had previously been suspended from participating in the
15  Medi-Cal program indefinitely, which was posted online in a list
16  named "Suspended and Ineligible Provider List" on California's Medi-
17  Cal website. Second, Co-schemer Do's suspension from participating in
18  California's workers' compensation program was posted on California's
19  DIR website, which listed the "Notice Issued" date of August 25,
20  2017, and "Suspension" date of October 19, 2018.  The DIR website had
21  hyperlinks on the dates, which linked to a copy of Co-schemer Do's
22  suspension order dated October 19, 2018.  Co-schemer Do also
23  discussed his suspensions with defendant who became aware of Co-
24  schemer Do's 2003 federal conviction for health care fraud in April
25  2018 after Co-schemer Do began to work for defendant at Liberty.
26      Notwithstanding co-schemer Do's suspension, which was finalized
27  in October 2018, defendant paid co-schemer Do approximately $306,000
28  for medical evaluations, medical record reviews, and preparation of

1  med-legal reports conducted after October 2018. Defendant paid co-
2  schemer Do with checks from Liberty which defendant would routinely
3  sign.

4      During this period, defendant caused Liberty to submit billings
5  to the California SIBTF from Liberty, which included reports that Co-
6  schemer Do had prepared and compiled, but which was concealed by
7  listing other doctors' names on the forms and reports.  For that same
8  time period, California paid Liberty a total of more than $3 million
9  for such SIBTF billings, including approximately $1.3 million in
10 2019, $1.2 million in 2020, $499,000 in 2021, and $141,000 in 2022.
11 Aside from the total of approximately $306,000 that Liberty had paid
12 Co-schemer Do during those several years, much of the more than $3
13 million that the SIBTF paid Liberty during those years then flowed to
14 the management company, which was controlled by defendant totaling
15 more than $1.5 million.

16     After October 2018, defendant understood and believed that the
17 payments from Liberty to Co-schemer Do were for medical evaluations,
18 medical record reviews, and preparation of med-legal reports.  Co-
19 schemer Do hired T.D., a licensed medical provider, to conduct
20 patient evaluations.  T.D. did not assist in the preparation or
21 review of the med-legal reports.  In or about December 2021, T.D.
22 died of natural causes.

23     Following T.D.'s death of which defendant was aware, he
24 continued to pay Co-schemer Do for medical evaluations, medical
25 record reviews, and preparation of med-legal reports. Defendant
26 caused bills to be submitted by U.S. mail to SIBTF for these
27 services. These bills falsely represented that such services were
28 provided by licensed physician R.H. when, as defendant knew, the

services (other than the in-person examinations) were provided by Co-schemer Do who was a prohibited provider due to his 2018 suspension based upon his 2003 federal health care fraud conviction. Of the approximately $306,000 that defendant paid Co-schemer Do for medical evaluations, medical record reviews, and preparation of med-legal reports conducted after October 2018, approximately $38,000 was paid after defendant became aware that Co-schemer Do was actually providing the services.

On or about February 10, 2022, a medical report, prepared by Co-schemer Do, was sent to SIBTF for patient O.M. by U.S. Mail. On or about March 30, 2022, SIBTF issued a check in the amount of $2,435, addressed to Liberty, and sent by U.S. Mail for patient O.M. On March 4, 2022, defendant issued and signed a check from Liberty's account to Co-schemer Do in the amount of $770.66 for his services in preparing the medical report for patient O.M.

The parties agree that for purposes of this plea agreement, the applicable loss amount for Guidelines purposes from defendant's participation in this scheme to defraud is approximately $38,670, which is the amount of funds SIBTF paid to Liberty paid for reports that defendant knew Co-schemer Do had drafted after being suspended from participating in the California SIBTF program.

<u>SENTENCING FACTORS</u>

10.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have

1  any expectation of receiving a sentence within the calculated

2  Sentencing Guidelines range, and that after considering the

3  Sentencing Guidelines and the other § 3553(a) factors, the Court will

4  be free to exercise its discretion to impose any sentence it finds

5  appropriate up to the maximum set by statute for the crime of

6  conviction.

7      11.  Defendant and the USAO agree to the following applicable

8  Sentencing Guidelines factors:

9      Base Offense Level:            7        U.S.S.G. § 2B1.1(a)(1)

10     Loss > $15,000:               +4        U.S.S.G. § 2B1.1(b)(1)(C)

11  The USAO will agree to a two-level downward adjustment for acceptance

12  of responsibility (and, if applicable, move for an additional one-

13  level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the

14  conditions set forth in paragraph 3 are met and if defendant has not

15  committed, and refrains from committing, acts constituting

16  obstruction of justice within the meaning of U.S.S.G. § 3C1.1, as

17  discussed below.  The USAO reserves the right to seek a 2-level

18  upward adjustment for manager or supervisor role pursuant to U.S.S.G.

19  § 3B1.1, and Defendant reserves the right to seek a 2-level downward

20  adjustment for 0-point offender pursuant to U.S.S.G. 4C1.1.  Subject

21  to paragraphs 12 and 25 below, defendant and the USAO agree not to

22  seek, argue, or suggest in any way, either orally or in writing, that

23  any other specific offense characteristics, adjustments, or

24  departures relating to the offense level be imposed.  Defendant

25  agrees, however, that if, after signing this agreement but prior to

26  sentencing, defendant were to commit an act, or the USAO were to

27  discover a previously undiscovered act committed by defendant prior

28  to signing this agreement, which act, in the judgment of the USAO,

13

constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section and to argue that defendant is not entitled to a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.

12. The USAO will agree the defendant is entitled to a one-level downward variance under Section 3553(a) as recognition of defendant's early acceptance of responsibility, based upon defendant's: (1) immediately resigning from his position as an Orange County Superior Court Judge; and (2) entering this pre-indictment disposition. The USAO agrees only if the conditions set forth in paragraph 3 are met and if defendant has not committed, and refrains from committing, acts constituting obstruction of justice within the meaning of U.S.S.G. § 3C1.1.

13. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

14. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

15. Defendant understands that by pleading guilty, defendant gives up the following rights:

      a.    The right to persist in a plea of not guilty.

      b.    The right to a speedy and public trial by jury.

      c.    The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be

14

1  represented by counsel -- and if necessary have the Court appoint

2  counsel -- at every other stage of the proceeding.

3          d.    The right to be presumed innocent and to have the

4  burden of proof placed on the government to prove defendant guilty

5  beyond a reasonable doubt.

6          e.    The right to confront and cross-examine witnesses

7  against defendant.

8          f.    The right to testify and to present evidence in

9  opposition to the charges, including the right to compel the

10 attendance of witnesses to testify.

11         g.    The right not to be compelled to testify, and, if

12 defendant chose not to testify or present evidence, to have that

13 choice not be used against defendant.

14         h.    Any and all rights to pursue any affirmative defenses,

15 Fourth Amendment or Fifth Amendment claims, and other pretrial

16 motions that have been filed or could be filed.

17                   WAIVER OF APPEAL OF CONVICTION

18     16.  Defendant understands that, with the exception of an appeal

19 based on a claim that defendant's guilty plea was involuntary, by

20 pleading guilty defendant is waiving and giving up any right to

21 appeal defendant's conviction on the offense to which defendant is

22 pleading guilty.  Defendant understands that this waiver includes,

23 but is not limited to, arguments that the statute to which defendant

24 is pleading guilty is unconstitutional, and any and all claims that

25 the statement of facts provided herein is insufficient to support

26 defendant's plea of guilty.

27

28

                                  15

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

17.  Defendant agrees that, provided the Court imposes a total term of imprisonment within or below the range corresponding to an offense level of 10 and a criminal history calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

18.  The USAO agrees that, provided all portions of the sentence are at or below the statutory maximum specified, the USAO gives up its right to appeal any portion of the sentence.

## WAIVER OF RIGHTS CONCERNING PLEA COLLOQUY AND FACTUAL BASIS

19.  Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing; (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of

16

Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

Defendant further agrees that this paragraph of the agreement is severable. Thus, defendant's waivers are binding and effective even if, subsequent to defendant's signing this agreement, defendant declines to plead guilty, the Court declines to accept his guilty plea, or, if this agreement is of the type described in Federal Rule of Criminal Procedure 11(c)(1)(A) or (c)(1)(C), the Court rejects this agreement. Defendant also agrees that his waivers are binding and effective even if some other portion of this agreement is found to be invalid by this Court or the Ninth Circuit.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

20. Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

EFFECTIVE DATE OF AGREEMENT

21.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

22.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

23.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

   a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

   b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any

18

speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

24.   Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

25.   Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 11 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

26.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions

1  different from those agreed to, and/or imposes any sentence up to the

2  maximum established by statute, defendant cannot, for that reason,

3  withdraw defendant's guilty plea, and defendant will remain bound to

4  fulfill all defendant's obligations under this agreement.  Defendant

5  understands that no one -- not the prosecutor, defendant's attorney,

6  or the Court -- can make a binding prediction or promise regarding

7  the sentence defendant will receive, except that it will be within

8  the statutory maximum.

9                          NO ADDITIONAL AGREEMENTS

10     27.  Defendant understands that, except as set forth herein,

11  there are no promises, understandings, or agreements between the USAO

12  and defendant or defendant's attorney, and that no additional

13  promise, understanding, or agreement may be entered into unless in a

14  writing signed by all parties or on the record in court.

15  ///

16

17

18

19

20

21

22

23

24

25

26

27

28

## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

28. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TODD BLANCHE
Deputy Attorney General

BILAL A. ESSAYLI
First Assistant United States
Attorney

_Stephanie Orrick_ _____        12/09/2025
STEPHANIE L. ORRICK                         Date
Special Assistant United States
Attorney

_____                    12/8/2025
ISRAEL CLAUSTRO                             Date
Defendant

_____                    12/8/2025
PAUL MEYER                                  Date
Attorney for Defendant ISRAEL
CLAUSTRO


## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or

1  at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),
2  of relevant Sentencing Guidelines provisions, and of the consequences
3  of entering into this agreement.  No promises, inducements, or
4  representations of any kind have been made to me other than those
5  contained in this agreement.  No one has threatened or forced me in
6  any way to enter into this agreement.  I am satisfied with the
7  representation of my attorney in this matter, and I am pleading
8  guilty because I am guilty of the charge and wish to take advantage
9  of the promises set forth in this agreement, and not for any other
10  reason.

11
12  ISRAEL CLAUSTRO                          Date 12/8/2025
    Defendant
13
14          CERTIFICATION OF DEFENDANT'S ATTORNEY
15      I am Israel Claustro's attorney.  I have carefully and
16  thoroughly discussed every part of this agreement with my client.
17  Further, I have fully advised my client of his rights, of possible
18  pretrial motions that might be filed, of possible defenses that might
19  be asserted either prior to or at trial, of the sentencing factors
20  set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
21  provisions, and of the consequences of entering into this agreement.
22  To my knowledge: no promises, inducements, or representations of any
23  kind have been made to my client other than those contained in this
24  agreement; no one has threatened or forced my client in any way to
25  enter into this agreement; my client's decision to enter into this
26  agreement is an informed and voluntary one; and the factual basis set
27  ///
28

                              22

forth in this agreement is sufficient to support my client's entry of

a guilty plea pursuant to this agreement.

_____                    12/8/25
PAUL MEYER                                    Date
Attorney for Defendant ISRAEL
CLAUSTRO

23

# EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>ISRAEL CLAUSTRO,<br><br>        Defendant. | No.<br><br>I N F O R M A T I O N<br><br>[18 U.S.C. § 1341: Mail Fraud; 18 U.S.C. § 2(a): Aiding and Abetting and Causing an Act To Be Done] |

The United States of America charges:

[18 U.S.C. §§ 1341, 2(a)]

A.    INTRODUCTORY ALLEGATIONS

At all times relevant to this Information:

1.    Defendant ISRAEL CLAUSTRO ("CLAUSTRO") was an attorney, was not a physician or other medical professional, and resided in Orange County within the Central District of California.

2.    Liberty Medical Group Inc. ("Liberty") was a medical corporation incorporated in November 2015 and located in San Bernardino County within the Central District of California. Defendant CLAUSTRO operated Liberty.

3.    California's Subsequent Injuries Benefits Trust Fund

("SIBTF") was a special fund administered by the California Division of Workers' Compensation ("DWC"), providing additional compensation to injured workers who previously had a disability or impairment at the time of an injury.

4.    Co-schemer Kevin Tien Do ("Do"), was a licensed physician in the state of California.  In 2003, Co-schemer Do was convicted of federal health care fraud, a felony, in violation of 18 U.S.C. § 1347, for which he was sentenced to 12 months of imprisonment.

B.    THE SCHEME TO DEFRAUD

5.    In at last March 2022, and continuing through at least in or about September 2022 in Orange County, Los Angeles County, Riverside County, and San Bernardino County, within the Central District of California, and elsewhere, defendant CLAUSTRO, together with others known and unknown, knowingly and with the intent to defraud, devised, participated in, aided and abetted, and executed a scheme to defraud SIBTF as to material matters, and to obtain money and property, by means of material false and fraudulent pretenses, representations, and promises.

6.    The fraudulent scheme operated, in substance, as follows:

a.    Defendant CLAUSTRO owned, operated, and controlled Liberty, a medical corporation, despite being prohibited from doing so under California law, as defendant CLAUSTRO was not a physician or other medical professional.

b.    Defendant CLAUSTRO hired other doctors and employees of Liberty and signed checks from Liberty to other doctors and employees, including to Co-schemer Do.

c.    On or about October 19, 2018, the DWC issued a final order suspending Co-schemer Do from participating in California's

2

1   workers' compensation system, which included the SIBTF.  Co-schemer

2   Do received notice of the final order by certified U.S. Mail on or

3   about October 19, 2018.

4            d.    Notwithstanding Co-schemer Do's October 2018

5   suspension from participating in California's workers' compensation

6   programs, which included the SIBTF program, Co-schemer Do worked for

7   Liberty on workers' compensation matters, including drafting and

8   preparing SIBTF-related medical-legal reports.

9            e.    Co-schemer Do drafted and prepared medical-legal

10  reports for Liberty, which Liberty mailed to the California SIBTF

11  with billing forms, requesting payment.

12           f.    Co-schemer Do listed other doctors' names on those

13  reports and forms mailed by Liberty to the California SIBTF for

14  payment, despite the fact that Co-schemer Do was authoring the

15  reports.

16           g.    Liberty paid Co-schemer Do for drafting and preparing

17  SIBTF-related medical reports after he had been suspended from

18  participating in California's workers' compensation programs.

19  C.   USE OF THE MAIL

20       7.    On or about February 10, 2022, in Orange County, within the

21  Central District of California, and elsewhere, defendant CLAUSTRO,

22  for the purpose of executing the above-described scheme to defraud,

23  caused a medical-legal evaluation report for patient O.M. to be

24  placed in an authorized depository for mail matter to be sent and

25  //

26  //

27  //

28  //

delivered by the United States Postal Service according to the
directions thereon, specifically from Liberty in Rancho Cucamonga,
California addressed to SIBTF at 1750 Howe Avenue, Suite 370,
Sacramento, California.

TODD BLANCHE
Deputy Attorney General

BILAL A. ESSAYLI
First Assistant United States
Attorney


ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

MARK P. TAKLA
Assistant United States Attorney
Chief, Orange County Office

STEPHANIE L. ORRICK
Special Assistant United States
Attorney
Orange County Office